**In re KINGMAN WAREHOUSE CO. IX, Debtor.**

**ATLAS, LTD., Plaintiff,**

v.

**KINGMAN WAREHOUSE CO. IX, Defendant (Two Cases).**

Bankruptcy Nos. 81–00274, 81–00275. Adv. Nos. 81–0624, 81–0625.

United States Bankruptcy Court, N. D. Iowa, Cedar Rapids Division.

Feb. 8, 1982.

William H. Ryan and Dennis J. McMenimen, Cedar Rapids, Iowa, for plaintiff.

R. Fred Dumbaugh, Cedar Rapids, Iowa, for defendants.

### ORDER, with Memorandum, Terminating 11 U.S.C. § 362(a) Stay

WILLIAM W. THINNES, Bankruptcy Judge.

Plaintiff Atlas, Ltd., filed 11 U.S.C. § 362(d) complaints against Defendant Kingman Warehouse Co. IX, Adversary No. 81–0624, and Defendant Kingman Warehouse Co. XI, Adversary No. 81–0625. Preliminary hearings before the Court were held on both complaints. These matters then came before the Court for final hearings on December 23, 1981. Upon agreement of the parties, the hearings were consolidated. Testimony was then received, and the matters were taken under advisement in order to allow the parties an opportunity to submit written closing statements. Such statements having been filed, these matters have now been fully submitted, and the Court makes the following Findings of Fact, Conclusions of Law, and Orders:

## FINDINGS OF FACT

1. Each Defendant filed a Chapter 11 reorganization petition in the United States Bankruptcy Court for the Northern District of Iowa on September 23, 1981.

2. Each Defendant is a limited partnership, which is the contract purchaser of a warehouse located in Cedar Rapids, Iowa.

3. Both warehouses were constructed by the Plaintiff and were sold by the Plaintiff to the respective Defendants for approximately 2.1 million dollars, plus interest, per warehouse.

4. Both warehouses contain appoximately 100,000 square feet of storage space, are located within the same vicinity, and are identical in almost every respect.

5. Each of the Defendants still owes the Plaintiff approximately 1.7 million dollars on its contract with the Plaintiff.

6. Each Defendant made a partial contract payment for the month of June, 1981, but has failed to make any contractual payments for the months of July, August, and September, 1981. Each Defendant has not made any contractual payments since its Bankruptcy petition was filed.

7. The Plaintiff has a continuing obligation to make mortgage payments on each of the warehouse properties.

8. The Plaintiff is obligated to make a monthly mortgage payment of $9,450.00 on Kingman Warehouse No. IX and $8,033.50 on Kingman Warehouse No. XI.

9. Donald R. Wehr, a certified real estate appraiser, appraised each warehouse as having a fair market value of $1,550,000.00.

10. Robert C. Kenney, a certified real estate appraiser, appraised each warehouse as having a fair market value of $1,600,-000.00.

11. Don E. Kensinger, Jr., a certified real estate appraiser, appraised each warehouse as having a fair market value of $1,600,000.00.

12. The warehouses have not significantly depreciated during the course of the respective bankruptcy proceedings of the defendants.

13. The warehouses are presently insured.

14. A "portion" of the estimated amount of the 1982 real estate taxes for each of the warehouses is in escrow.

15. The partners of each of the Defendants have not committed themselves to the making of any additional capital contributions to the Defendants.

16. Each of the Defendants has attempted to lease or sell the warehouse properties, but without success.

17. There is approximately 600,000 square feet of vacant warehouse space presently in Cedar Rapids, Iowa.

18. Defendants have no equity in the properties.

19. The properties are essential to any reorganization of Defendants.

20. The real property involved will neither appreciate nor depreciate in the foreseeable future.

21. Plaintiff's interest in the real property is not adequately protected and is diminishing because of Plaintiff's necessity to make mortgage payments and, prospectively, tax payments on the property.

## CONCLUSIONS OF LAW

1. Pursuant to 11 U.S.C. § 362(d)(1), the Plaintiff, the contract seller of the warehouses involved, has an "interest in property" with respect to each of the warehouses, which is entitled to "adequate protection" during the course of the respective bankruptcy proceedings of the Defendants.

2. Pursuant to 11 U.S.C. § 362(d)(1), an interest in property of a creditor must be protected to the extent of the value, at the time of the commencement of the debtor's bankruptcy proceeding, of that creditor's lien against the property involved.

3. Pursuant to 11 U.S.C. § 362(d)(1), where a secured creditor is undersecured, the value of the collateral constitutes the value of that creditor's lien.

4. The Plaintiff has not been protected to the extent of the value, at the time of the commencement of the respective bankruptcy proceedings of the Defendants, of that creditor's lien against each of the warehouses, in that the Plaintiff has continued to make the required mortgage payments on the properties even though each of the Defendants has ceased making the contract installment payments. Thus, Plaintiff's position has been eroded each month by an amount representing the amount of the respective mortgage payments that the Plaintiff makes on the properties.

5. The Plaintiff's "interest in property" with respect to each of the warehouses involved, therefore, has not been, and is not now, adequately protected as required by 11 U.S.C. § 362(d)(1).

6. Neither of the Defendants has proposed the granting of any type of relief that would accord the Plaintiff such adequate protection, and each Defendant appears unable to furnish such adequate protection if the Court would fashion such relief on its own initiative.

7. Pursuant to 11 U.S.C. § 362(d)(1), therefore, the automatic stay imposed upon the plaintiff by 11 U.S.C. § 362(a) should be terminated in order to allow the Plaintiff to proceed against each of the Defendants on its respective real estate contracts with the Defendants.

### ORDERS

IT IS ORDERED, pursuant to 11 U.S.C. § 362(d)(1), that the automatic stay imposed upon Atlas, Ltd., by 11 U.S.C. § 362(a) when the Bankruptcy Petition of Kingman Warehouse Co. IX, the Debtor in Bankruptcy No. 81–00274, was filed shall be, and the same is, terminated in order to allow Atlas, Ltd., to proceed against Kingman Warehouse Co. IX on its real estate installment sales contract with that Debtor.

IT IS FURTHER ORDERED, pursuant to 11 U.S.C. § 362(d)(1), that the automatic stay imposed upon Atlas, Ltd., by 11 U.S.C. § 362(a) when the Bankruptcy Petition of Kingman Warehouse Co. XI, Debtor in Bankruptcy No. 81–00275, was filed shall be, and the same is, terminated in order to allow Atlas, Ltd., to proceed against Kingman Warehouse Co. XI on its real estate installment sales contract with that Debtor.

### MEMORANDUM

The matters presently before the Court are alike in almost every factual and legal respect. Atlas, Ltd., constructed three warehouses, which presently stand in southeast Cedar Rapids, Iowa. Each warehouse is of similar structural design, is located next to the other two, and contains approximately 100,000 square feet of storage space. Atlas, Ltd., retained ownership to, and possession of, one of the warehouses, but sold the other two, through installment sales contracts, to two limited partnerships. The limited partnership that purchased the warehouse that was designated throughout these proceedings as Kingman Warehouse No. IX became known as Kingman Warehouse Company IX. The limited partnership that purchased the warehouse that was designated throughout these proceedings as Kingman Warehouse XI became known as Kingman Warehouse Company XI.[1]

The warehouses were originally constructed for the purpose of leasing storage space to Rockwell-Collins International, which is a major employer in the area and which has its major plant located in close proximity to the three warehouses.[2] Rockwell-Collins International, however, never committed itself to leasing either Kingman Warehouse No. IX or Kingman Warehouse No. XI, and those two warehouses are, for

---

1. The two transactions were apparently closely related. The general partner in both of the limited partnerships is the same individual, and several individuals are limited partners in both of the partnerships.

2. Rockwell-Collins, International, is currently leasing the third warehouse, Kingman Warehouse VIII, but has informed Atlas, Ltd., that it does not intend to renew this lease upon the lease's expiration.

all practical purposes,[3] vacant at this time. Kingman Warehouse Co. IX and Kingman Warehouse Co. XI, (hereinafter referred to as Defendants) were current in their respective contract payments until June, 1981. Defendants made a partial contract payment in June, 1981, but made no payments for the months of July, August, and September, 1981. On September 23, 1981, each Defendant filed a Chapter 11 Bankruptcy Petition in this Court. Since that time, neither Defendant has made any payment whatsoever to the Plaintiff. Upon the filing of the respective bankruptcy petitions of the Defendants, Atlas, Ltd., was precluded from attempting to forfeit the real estate installment sales contracts by the automatic stay imposed against it by 11 U.S.C. § 362(a). Atlas, Ltd., then filed an 11 U.S.C. § 362(d) complaint against each Defendant, seeking to have the automatic stay terminated as to it in order to allow it to forfeit the contracts.

Section 362(d)(1) of the Bankruptcy Code grants a party in interest, after notice and hearing, the right to have the 11 U.S.C. § 362(a) automatic stay terminated, annulled, modified, or conditioned "for cause, including lack of adequate protection of an interest in property of such party in interest."[4] Under 11 U.S.C. § 362(d), "the 'interest in property' entitled to protection is not measured by the amount of the debt but by the value of the lien." *In re Alyucan Interstate Corp.*, 12 B.R. 803, 808, 4 C.B.C.2d 1066, 1070 (B.Ct.D.Utah, 1981) (footnote omitted). Where a secured creditor is undersecured, the value of the collateral at the time when the debtor's bankruptcy petition is filed constitutes the value of its lien. *Id.* 12 B.R. 808, 4 C.B.C.2d at 1070 n.10.[5]

Where the collateral is real property, the lien of an undersecured creditor would not appear to be impaired during the course of the debtor's bankruptcy proceedings because real property generally increases, not decreases, in value with time. In the instant cases, Donald R. Wehr, a certified real estate appraiser, called by the Plaintiff, testified that neither warehouse had appreciably decreased in value since the filing of the respective bankruptcy petitions of the Defendants. The value of Plaintiff's respective liens is impaired in the instant cases, however, regardless of such a lack of depreciation, because the Plaintiff is still obligated to make monthly mortgage payments on the respective properties. The value of the Plaintiff's respective liens at the time the bankruptcy petitions were filed has eroded, and will continue to erode, to the extent that Plaintiff has made, and must continue to make, such mortgage payments without receiving any type of payments from the Defendants.[6] Plaintiff's

3. Donald Pfeiler, partner in both partnerships and the person who manages both warehouses, testified that an amount of storage space in one of the warehouses was currently being rented for a total of approximately $530.00 per month.

4. With respect to a stay of an act against property, Subsection 2 of 11 U.S.C. § 362(d) grants the right to a party in interest, after notice and hearing, to have the automatic stay terminated, annulled, modified, or conditioned, if the debtor has no equity in the property *and* the property is not necessary for an effective reorganization of the debtor. The relief afforded a party in interest by 11 U.S.C. § 362(d)(2) is alternative relief to that afforded a party in interest by 11 U.S.C. § 362(d)(1). *In the Matter of Sulzer*, 7 B.R. 475, 1 C.B.C.2d 451, 457–458 (B.Ct.S.D. N.Y., 1981). The plaintiff, however, cannot prevail under 11 U.S.C. § 362(d)(2) because, while each of the defendants does not have equity in either of the warehouses, the warehouses are certainly necessary for the effective Chapter 11 reorganization of the respective defendants because the business of each defendant is solely concerned with leasing the warehouse space or with selling the warehouse.

5. This Court has always held that, at a minimum, the collateral must be insured in order to protect a secured creditor's lien from being impaired. *See also In re Alyucan Interstate Corp., supra*, 12 B.R. at 808, 4 C.B.C.2d at 1070 ("vicissitudes in the market, loss of insurance or other factors affecting the value of the lien are relevant to adequate protection").

6. The fair market value of each warehouse at the time the respective bankruptcy petitions were filed was between 1.55 and 1.6 million dollars. Each defendant owed approximately 1.7 million dollars on its contract with the plaintiff. Thus, the plaintiff was undersecured with respect to its contract with each defendant, and the value of its collateral at the time of the filing of the respective bankruptcy peti-

"interest in property" in each of the warehouses is not, therefore, adequately protected pursuant to 11 U.S.C. § 362(d)(1).

■ Where a secured creditor is not adequately protected pursuant to 11 U.S.C. § 362(d)(1), it is generally the responsibility of the debtor or the trustee to propose some form of adequate protection. H.R.Rep.No. 595, 95th Cong., 1st Sess. 338 (1977); S.Rep. No.989, 95th Cong., 2nd Sess. 49 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. In the instant cases, each debtor proposes to do no more than to keep the property insured, attempt to make some type of arrangement to pay the real estate taxes as such taxes become due, and continue to attempt to sell or lease the respective warehouses. In light of the continual impairment of the value of Plaintiff's lien with respect to each of the Defendants, such proposals would clearly not provide adequate protection to the Plaintiff.

Some Courts, on their own initiative, have fashioned relief that would accord a creditor adequate protection. *See In re Alyucan Interstate Corp., supra* 12 B.R. at 809, 4 C.B.C.2d at 1071 n.12. In the instant cases, the Plaintiff would be adequately protected if Defendants were required to keep the warehouses insured, pay the real estate taxes as such taxes become due, pay the Plaintiff an amount representing the amount Plaintiff must pay in the form of monthly mortgage payments on the warehouses, and pay the Plaintiff an additional amount per month that would remedy, over a reasonable period of time, the impairment the Plaintiff has experienced in the value of its lien on each of the warehouses since the filing of the respective bankruptcy petitions.[7] The Court will not order such relief, however, because it is clear that the Defendants are unable or unwilling to comply with such an Order. Donald H. Pfeiler, partner in both of Defendants and the person who currently manages the warehouses, testified that any additional capital contribution from the limited partners of each of the Defendants would only take place on the occurrence of rather improbable events. Furthermore, several limited partners of each partnership have informed Mr. Pfeiler that they will not contribute any additional capital to the partnerships.

Also, it is highly unlikely that such payments to the Plaintiff could come in the form of rental income from the two warehouses because both warehouses have been vacant for an extended period of time,[8] and it is doubtful that either warehouse can be rented in the near future in light of the current warehouse market in Cedar Rapids, where more than 600,000 square feet of warehouse space is vacant at the present time. Also, Mr. Pfeiler testified that the best hope for renting the warehouses was an internal restructuring of the warehouses so that, instead of being designed to have its entire space rented by a single lessee, each warehouse would be divided into stor-

---

tions, constituted the value of its respective liens. *In re Alyucan Interstate Corp., supra*, 12 B.R. at 808, 4 C.B.C.2d at 1070. The defendant must make monthly mortgage payments of $9,450.00 on Kingman Warehouse IX and $8,032.50 on Kingman Warehouse XI. Although the warehouses have not appreciably decreased in value since the time the Petitions in Bankruptcy were filed, neither have they increased in value. Also, the respective defendants have not made any payments whatsoever to the plaintiff during the course of their bankruptcy proceedings. Thus, the value of plaintiff's lien is impaired to the extent of the amount of the mortgage payments each time it makes such payment on each warehouse during the course of the respective bankruptcy proceeding of the defendant.

7. *See* 11 U.S.C. § 361(1).

8. Indeed, the only time one of these warehouses was ever occupied was when the Plaintiff itself leased the property for a year in order to trigger the consummation of the sale of that warehouse, pursuant to a clause in the contract that conditioned the obligation of that defendant to purchase the warehouse on the presence of a committed tenant. It is important to note that the Defendant was well aware of the fact that the contractually-required tenant was the Plaintiff-seller itself and that the Defendant involved did not object to the Plaintiff-seller's demand, based upon the presence of the contractually-required tenant, to consummate the sale of respective warehouses. *Cf.* Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith*, 94 Harv.L.Rev. 369 (1980).

age compartments, which in turn could be individually leased to a multitude of lessees. Such restructuring, however, would take an influx of capital to which neither defendant apparently has access. Furthermore, although the Defendants have tried to sell the respective warehouses, a potential buyer has never come to Cedar Rapids to inspect either warehouse.

It only forestalls the inevitable, and impairs the lien position of the creditor further, to condition the 11 U.S.C. § 362(a) automatic stay on the performance by the debtor of certain terms and conditions when it is clear at the outset that the debtor is unable or unwilling to perform such terms and conditions and afford the creditor adequate protection. The Court is, therefore, forced to conclude that the 11 U.S.C. § 362(a) stay should be terminated in order to allow the Plaintiff to proceed against both Defendants on its respective real estate sale installment contracts with those Defendants.